**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Jason Jones,

      Petitioner,

                                              Case No. 1:09cv158

v.

                                              Judge Michael R. Barrett

Warden, Ross Correctional Institution,

      Respondent.

**ORDER**

      Before the Court is Magistrate Judge Timothy S. Hogan's May 21, 2010, Report and Recommendation ("R&R") (Doc. 20).  The R&R addresses Petitioner Jason Jones's petition for writ of habeas corpus (Docs. 2, 3) brought under 28 U.S.C. §2254. Petitioner filed timely objections to the R&R (Doc. 28).

      The Court has reviewed the comprehensive findings of the magistrate judge and considered de novo all filings in this matter.  For the reasons provided below, the Court ADOPTS the R&R in its entirety.

**I.    FACTUAL BACKGROUND**

      Following a jury verdict finding Petitioner guilty of involuntary manslaughter, Petitioner was sentenced to eight years of imprisonment.  With the assistance of counsel, Petitioner filed a timely appeal to the Court of Appeals of Ohio, First Appellate District.  On October 12, 2007, the Ohio Court of Appeals overruled Petitioner's seven assignments of error and affirmed the trial court's judgment.  *State v. Jones*, No. C-060512, 2007 WL 2965341, at *10 (Ohio Ct. App. Oct. 12, 2007).  On March 12, 2008,

1

Petitioner's appeal to the Ohio Supreme Court was subsequently dismissed as not involving any substantial constitutional question.  *State v. Jones*, 117 Ohio St.3d 1425 (Ohio 2008).

Petitioner filed this federal habeas action pro se on March 6, 2009.  (Docs. 2, 3.) Thereafter, Petitioner filed a motion to stay his pending habeas petition (Doc. 7) followed by a motion to amend the motion to stay (Doc. 9).  A Report and Recommendation recommended that both motions be denied.  (Doc. 12.)  Petitioner objected (Doc. 14), but on March 26, 2010, this Court adopted that Report and Recommendation thereby denying Petitioner's motions (Doc. 15).  This Court issued a subsequent Order (Doc. 18) denying Petitioner's motion for reconsideration (Doc. 17).

Petitioner asserts seven grounds for relief: (1) the conviction was not supported by sufficient evidence; (2) the conviction was against the manifest weight of the evidence; (3) the trial court erred by overruling Petitioner's motion for acquittal under Ohio Criminal Procedure Rule 29; (4) the trial court erred when it allowed the State to present evidence of Petitioner's previous arrest, allegedly in violation of Ohio Evidence Rule 404(B); (5) prosecutorial misconduct; (6) the trial court erred when it failed to suppress the identification evidence of Petitioner; and (7) the trial court erred by imposing an excessive sentence.  (Doc. 20, 6-7; Doc. 2.)  Petitioner objects to the R&R based on Grounds One through Six.  (*See* Doc. 28.)

## II.    **MAGISTRATE JUDGE'S R&R**

The R&R found that Petitioner's claims lack merit or are otherwise not cognizable in a habeas corpus proceeding and, therefore, that Petitioner is not entitled to federal habeas relief.  Accordingly, the magistrate judge recommends that: (1) Petitioner's

2

petition for writ of habeas corpus should be denied with prejudice; (2) a certificate of appealability should not issue; and (3) Petitioner should be denied leave to proceed on appeal *in forma pauperis*.  In his objections, Petitioner essentially repeats the arguments considered and rejected by the magistrate judge.

III.  **ANALYSIS**

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).  Moreover, state-court adjudications are binding on this Court unless those decisions are contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). However, if the state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the deferential standard of review in § 2254(d) does not apply.  *Id.*  In such a situation, the constitutional claim is reviewed de novo and the Court considers "the totality of the evidence—'both that adduced at trial, *and the evidence adduced in the habeas proceedings*.'"  *Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (emphasis in original) (*quoting Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).

Regarding objections to a magistrate judge's report and recommendation on a non-dispositive matter, the assigned district judge can modify or set aside the findings if they are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  However, when objections are received on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."

3

Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

Before addressing the Grounds in Petitioner's habeas petition, this Court will briefly address Petitioner's first "objection" to the magistrate judge's R&R.  In this objection, Petitioner is actually objecting to this Court's previous Order denying Petitioner's motion and amended motion to stay his habeas petition (Doc. 15), as well as this Court's subsequent Order denying Petitioner's motion for reconsideration (Doc. 18).  Petitioner argues that this Court abused its discretion by denying Petitioner's motions.  However, Petitioner does not provide any new information or evidence beyond that already provided in his previous motions.  This Court twice ruled on Petitioner's motions, providing sound reasoning to support the denial of his motions in each Order.  (*See* Docs. 15, 18.)  Because neither the relevant facts nor circumstances have changed in Petitioner's favor since the filing of those Orders, this Court will not further address Petitioner's argument regarding his motion to stay.  The Court rejects Petitioner's objection regarding his continued request for a stay of his habeas petition.

## A.  Grounds One and Three

Petitioner contends that the evidence at trial was insufficient to support his conviction, arguing that the only evidence linking Petitioner to the crime was the testimony of two "self-serving" individuals who, in return, hoped to receive lighter sentences for their involvement in the same incident.  In support of his argument, Petitioner contends that there was no physical evidence linking him to the crime.

Sufficient evidence supports a conviction if, "'after viewing the evidence in the

4

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *White v. Steele*, 602 F.3d 707, 709 (6th Cir. 2009) (*quoting Jackson v. Virginia*, 443 U.S. 307, 324, 560 (1979)). Moreover, the trier of fact is responsible for resolving conflicts in testimony, weighing evidence, and drawing reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-19.  On habeas corpus review, although the federal court conducts an independent review of the state-court record in analyzing a petitioner's sufficiency-of-the-evidence claim, *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006), the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (*citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (*quoting Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Finally, in considering a sufficiency claim, "circumstantial evidence is entitled to equal weight as direct evidence."  *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) (*citing United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)).

The magistrate judge agreed with the findings of the Ohio Court of Appeals that the evidence supports a finding of guilt beyond a reasonable doubt.  In addressing the merits of Petitioner's insufficiency-of-the-evidence argument, the Ohio Court of Appeals found the following:

{¶ 26} Jones was found guilty of involuntary manslaughter. Involuntary manslaughter is defined in R.C. 2903.04(A) as "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."  In this case, the state alleged that Jones had caused the death of Sublett while committing or attempting to commit the offense of trafficking in drugs.  The jury was instructed that, to find that Jones had committed or attempted to commit drug trafficking, it had to find that Jones had knowingly sold or offered to sell marijuana.

{¶ 27} Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could reasonably have found that Jones had caused the death of Sublett while trafficking in drugs, specifically while offering to sell marijuana.  Regarding the trafficking in drugs, both Randy Washington and DeAngelo Tait testified that Tait had arranged for a sale of marijuana from Marshall to Washington and Sublett.  The jury was presented with evidence that Jones had arrived with Marshall to conduct the sale.  Washington further testified that he had seen the marijuana before the sale or robbery occurred, and that he had removed two bags of marijuana from Sublett's body.  Officer Peterson saw a scattered pile of marijuana on the ground near Sublett.  Moreover, 429 pounds of marijuana were found in a home shared by Jones and Sheila Marshall, and $50,000 was found in a safety deposit box registered to Jones.

{¶ 28} The jury was further presented with sufficient evidence that Jones had caused Sublett's death.  It heard testimony that Washington had identified Jones as the driver of the car that had run over Sublett, and that Jones' girlfriend owned a green Dodge Durango, a vehicle that matched the description of this same car.  Also linking Jones to the crime was Detective Ohl's testimony that the spent casing found at the scene was made by the same manufacturer and contained similar markings to the casing on bullets found in Jones' home.  The evidence further established that, several hours after Sublett's murder, a Fred Jones had checked into a motel in Indianapolis, registered his vehicle as a 1998 Dodge Durango, and paid with a credit card belonging to Jason Jones.  The jury heard testimony from an employee of the Ohio Bureau of Motor Vehicles that Jones had received a driver's license containing his own photograph but issued in the name of Frederick White Jones.  And Jones had visited a safety deposit box, which was empty when searched, two days after Sublett's murder, and he had then resided in North Carolina for approximately one month.  Moreover, Chief Deputy Coroner Utz testified that Sublett had died from receiving a gunshot wound to his head, but that the injuries he had received after being run over by a motor vehicle could have caused his death as well.

6

{¶ 29} Following our review of the record, we conclude that Jones' conviction for involuntary manslaughter was supported by sufficient evidence and that the trial court did not err in overruling his Crim. R. 29 motion for an acquittal.

*State v. Jones*, No. C-060512, 2007 WL 2965341, at *5-6 (Ohio Ct. App. Oct. 12, 2007).

Agreeing with the Ohio Court of Appeals that the evidence supported a finding of guilt beyond a reasonable doubt, the magistrate judge stated as follows:

This case rested in large part on the credibility of witnesses and co-defendants Randy Washington and John Marshall.  Mr. Washington testified that he, Sublett and Tait hatched a plan to rob drug dealers on May 18, 2005.  (Tr. 473-77).  Tait testified that he spoke with Marshall, a supplier, to arrange a sale of two and a half pounds of marijuana for Washington and Sublett.  (Tr. 710-12).  In contrast, Marshall testified that Tait arranged a sale for his cousin, D.C.  (Tr. 920).

Washington testified that on the date in question, the drug dealers were in a green Durango, with Marshall in the passenger seat and petitioner in the driver's seat.  (Tr. 480, 502).  However, Marshall testified that he was the passenger in a green Tahoe driven by D.C.  (Tr. 920-21).  Marshall testified that after Sublett threatened both he and D.C. with a gun, D.C. pulled out a gun, shot Sublett, and drove away.  (Tr. 928-30).

Washington testified that after Sublett was shot, he observed two bags of marijuana lying next to Sublett's body.  (Tr. 492-93).  Hours after the shooting, petitioner was in Indianapolis with the Durango at a motel registered under the name Fred Jones, but paid for with a credit card in his own name.  (Tr. 416-17).  Springfield Township Police Officer James Ohl testified that petitioner and Sheila Marshall owned property together and that Shelia Marshall owned a vehicle of the make suspected as the vehicle involved in Sublett's death.  (Tr. 768-69).  Officers later discovered that Sheila Marshall was petitioner's girlfriend and James Marshall's sister.  (Tr. 770).  A search of the residence at which Sheila Marshall and petitioner resided revealed the presence of 429 pounds of marijuana (Tr. 781-89) and ammunition matching the bullet casings found at the scene of Sublett's shooting.  (Tr. 790-95).  Petitioner had also emptied a safe deposit box of $50,000.00 shortly after the shooting.  (Tr. 688-90, 695-96, 802-803).  From this evidence, the jury could have reasonably determined that in the process of selling marijuana to Sublett, petitioner caused Sublett's death.

Both Marshall and Washington were subjected to vigorous cross-examination by opposing counsel who attempted to cast doubt on their

credibility and their motivations for testifying.  The jury could reasonably have believed the testimony of Washington, while discrediting Marshall's contrary version of events, and on habeas review, this Court may not reweigh the evidence and reassess the credibility of the witnesses. *O'Hara*, 499 F.3d at 500; *Matthews*, 319 F.3d at 788.  In fact, the Court must presume that the jury resolved the conflicting evidence in favor of the prosecution in weighing the evidence in this case.  *O'Hara*, 499 F.3d at 499, 500.  When viewed in the light most favorable to the prosecution, the identification testimony of Washington, coupled with the testimony of Tait and the testifying police officers who investigated the incident, was sufficient to establish the essential elements of involuntary manslaughter beyond a reasonable doubt.

There was sufficient evidence from which any rational trier of fact could find petitioner guilty of involuntary manslaughter beyond a reasonable doubt.  When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction for involuntary manslaughter.

(Doc. 20, 12-14.)

After an independent review of the record, the Court agrees with and adopts the magistrate judge's foregoing analysis in full.  Because Petitioner does not present any new arguments in his objections, but instead essentially repeats those considered and rejected by the magistrate judge,[1] the Court will not further address the contentions in Petitioner's objections with respect to Grounds One and Three.

Based on the foregoing, the Court rejects Petitioner's objections and finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Grounds One and Three.

## B.  Ground Two

---

[1] In his objections, Petitioner attempts to attack the testimony of the State's witnesses, Randy Washington and DeAngelo Tait, by citing inconsistencies with statements made by Petitioner's witness, John Marshall.  As the Magistrate Judge explained, however, the case rested largely on the credibility of the witnesses, and the jury was entitled to reject the testimony of Petitioner's witness in favor of the State's witnesses.

Petitioner next argues that his conviction is against the manifest weight of the evidence.  As the magistrate judge explained, the Court lacks jurisdiction to consider this claim.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States, and not "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), *cert. denied*, 540 U.S. 930 (2003).  Accordingly, because Petitioner's manifest-weight-of-the-evidence claim raises an issue of state law only, it is not cognizable in this federal habeas proceeding.  *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *see also State v. Thompkins*, 78 Ohio St. 3d 380, 386-87 (Ohio 1997).[2]

In his objections, Petitioner appears to combine his manifest-weight-of-the-evidence claim with a claim of judicial estoppel.  Petitioner asserts that "the State withheld the full testimony of the coroner that stated that the injuries from the car did not cause [the victim's] death."  (Doc. 28, 2.)  As a result, Petitioner contends that the state-court judgment against him should be declared void on the theory of judicial estoppel.

This Court has already addressed this contention, ultimately finding that Petitioner's claim in this regard is futile.  (Doc. 15; *see also* Doc. 12, 18.)  Because the circumstances have not changed in Petitioner's favor, the Court declines to further address Petitioner's judicial-estoppel theory.

---

[2] It is noted that the Ohio Supreme Court's decision in *Thompkins* was superseded on other grounds by a state constitutional amendment allowing for Ohio Supreme Court review of manifest-weight-of-the-evidence claims in *death penalty* cases. *See State v. Smith*, 80 Ohio St.3d 89, 102-03 & n.4 (Ohio 1997).

Based on the foregoing, the Court rejects Petitioner's objections and finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Ground Two.

## C.  Ground Four

Petitioner argues that the trial court erred when it allowed the State to present, in violation of Ohio Evidence Rule 404(B), evidence of Petitioner's arrest on drug charges and evidence of the discovery of drugs and weapons in Petitioner's residence.[3]

As the magistrate judge explained, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  (Doc. 20, 17) (*citing McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)); *see also Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (stating in reference to habeas corpus challenge to admission of other acts evidence that "[s]tate court evidentiary rulings do not rise to the level of due process violations unless they 'offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'") (citations omitted)).  The Sixth Circuit has further noted that "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."  *Cooper v.*

_____

[3] Ohio Evidence Rule 404(B) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ohio Evid. R. 404(B).

*Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (same).

The magistrate judge found that Petitioner has failed to show that the Ohio Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.  This Court agrees.

Consistent with Ohio case law pertaining to Ohio Evidence Rule 404(B), the evidence of Petitioner's previous arrest, as well as the discovery of drugs and weapon's in his residence, helped establish Petitioner's identity and his scheme or plan to traffic in marijuana—an underlying element of the involuntary manslaughter offense for which Petitioner was convicted.[4]  Further consistent with Ohio law, the evidence helped the jury understand the context in which the crime occurred, including the circumstances surrounding and the events leading up to the victim's death, so as not create a situation in which the jury is making its decision in a void.[5]

In his objections, Petitioner makes conclusory statements that are unupported by the record or by applicable law.[6]  Moreover, Petitioner fails to direct the Court to new

---

[4] *See, e.g.*, *State v. Wilkinson*, 64 Ohio St. 2d 308, 315-16 (Ohio 1980) (finding that the phrase "scheme, plan or system," within statute governing admission of other crime's evidence, permits introduction in evidence of testimony concerning other acts which form part of immediate background of alleged act which formed foundation of crime charged in indictment).

[5] *See, e.g.*, *State v. Wilkinson*, 64 Ohio St. 2d 308, 317 (Ohio 1980) (stating that the jury "cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge") (internal quotations and citation omitted); *State v. Duncan*, 130 Ohio App. 3d 77, 86 (Ohio Ct. App. 1998) ("Background information is admissible to give the jury the setting of the case.").

[6] For example, Petitioner states that "[t]he 400 pounds of marijuana, found in a different county tha[n] the charged crime, was never in any way tied to the mentioned alleged drug deal, to [Petitioner] or even to Mr. Marshall.  Except for the State's conjecture and opinion, they presented no solid evidence to support that claim.  The house that the 429 pounds were found in was never tied to any defendant's or the State's witnesses as to it was never used or visited by anyone for the purpose of making a drug deal."  (Doc. 28, 7.)

11

evidence or case law to support his position that the trial court erred in admitting certain evidence against him.

In any case, even if Petitioner is correct that the prior-acts evidence was improperly admitted by the trial court, his argument still cannot prevail. According to the Sixth Circuit, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Rice v. Moore*, 633 F. Supp. 2d 541, 556 (S.D. Ohio 2008) ("[T]here is no clearly established Supreme Court precedent which holds that the admission of . . . propensity evidence violates the Due Process Clause."); *Sifuentes v. Prelesnik*, No. 1:03-CV-637, 2006 WL 2347529, at *1 (W.D. Mich. Aug. 11, 2006) ("The Supreme Court has not made a contrary ruling since *Bugh* and the holding that there is no 'clearly established' due process right against the use of propensity evidence is binding in this Circuit until either the Supreme Court or Sixth Circuit says otherwise."). After reviewing decisions from both the Supreme Court and the Sixth Circuit, the Court has not discovered any case law to the contrary. Accordingly, the holding that there is no 'clearly established' due-process right against the use of propensity evidence is binding on this Court. The Ohio Court of Appeals' decision is thus neither contrary to Supreme Court precedent nor an unreasonable application of federal law.

Based on the foregoing, the Court rejects the objections raised by Petitioner and finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Ground Four.

**D. Ground Five**

12

Petitioner next argues that the trial court erred when it denied Petitioner's motion for a mistrial on the basis of the prosecutor's alleged misconduct during closing argument.  More specifically, Petitioner contends that the prosecutor improperly labeled Petitioner's witness, James Marshall, as a liar and a person of moral turpitude. Petitioner also contests the prosecutor's statements that Marshall possessed two bags of marijuana based on the fact that those bags were not subsequently tested to prove their content.  Petitioner further argues that the prosecutor improperly referred to Petitioner as a "drug dealer" and that the prosecutor's reference to the 429 pounds of marijuana found in Petitioner's home was in itself improper, such that this reference impermissibly suggested that the two pounds of marijuana being sold were taken from Petitioner's home.

As the magistrate judge explained, "[a] federal habeas court does not sit as a traditional appellate review with supervisory power to correct general errors committed by a state authority; rather, it has power only to accord relief for *constitutional violations*."  *Linger v. Akram*, 23 F. App'x 248, 252 (6th Cir. 2001) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *see also Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) ("Habeas review is not a broad exercise of supervisory power, but is limited to constitutional error.").  On habeas review of a prosecutorial-misconduct challenge, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006).

The Sixth Circuit has adopted a two-part inquiry for determining whether

allegations of prosecutorial misconduct violate a petitioner's due-process rights:
"determining whether the statements were improper; and, if so, determining whether
they were flagrant enough to warrant reversal."  *United States v. Wells*, 623 F.3d 332,
337-38 (6th Cir. 2010) (footnote omitted).  Moreover, when determining whether the
prosecutor's remarks were improper, the remarks must be considered within the context
of the trial as a whole.  *Girts v. Yanai*, 501 F.3d 743, 759 (6th Cir. 2007).

If a court finds impropriety, it then considers four factors in determining flagrancy:
"(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or
prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive;
(3) whether the remarks were deliberately or accidentally made; and (4) whether the
evidence against the defendant was strong."  *United States v. Carter*, 236 F.3d 777, 783
(6th Cir. 2001) (*citing United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)).  The
Sixth Circuit has further noted that inappropriate but isolated prosecutorial comments do
not warrant a new trial, *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994), and
that reversal is required only if the prosecutor's misconduct is "so pronounced and
persistent that it permeates the entire atmosphere of the trial or so gross as probably to
prejudice the defendant," *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal
quotations and citations omitted).

Petitioner first argues that the prosecutor improperly called Marshall a liar and a
person of moral turpitude during closing arguments.  During the closing, the prosecutor
asserted that Marshall "lied . . . straight out" and then detailed how Marshall's testimony
was inconsistent with the facts.  (Tr. 1021-24.)  Specifically, the prosecutor described
Marshall's prior convictions, his relationship to Petitioner, his motive for lying, and how

Marshall's testimony describing the shooting was inconsistent with both the physical evidence and that of other witnesses.  (Tr. 1022-25.)

The prosecutor's "liar" comment, when viewed in the aforementioned context, indicates that the prosecutor based the remark on inferences from the evidence presented in court and not upon any personal knowledge.  Thus, because the prosecutor's reference to Marshall as a liar was based upon the significant evidence presented in court, was isolated in context, and did not create the impression that the prosecutor knew of evidence not presented to the jury, the prosecutor's comments did not deprive Petitioner of a fair trial.  *See Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008) (finding that the prosecutor did not engage in misconduct by referring to the defendant's alibi witnesses as "liars"); *see also Givens v. Yukins*, 238 F.3d 420, No. 98-2429, 2000 WL 1828484, at *7 (6th Cir. Dec. 5, 2000) (unpublished table decision) (referring to the petitioner as a liar, thief, drug kingpin, and prostitute in closing argument did not constitute prosecutorial misconduct when the prosecutor's comments were supported by evidence admitted at trial).

Moreover, Petitioner's objection to the prosecutor's "moral turpitude" comment was sustained by the trial judge.  (Tr. 1022.)  The trial judge also later instructed the jury to disregard statements that the court sustained following an objection.  (Tr. 1075-76.)  According to the Sixth Circuit, curative instructions are "presume[d] to have been effective unless there is an 'overwhelming probability' that they were ignored."  *Scott v. Mitchell*, 209 F.3d 854, 879 (6th Cir. 2000) (*quoting Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).  Because the trial court gave a curative instruction, which this Court must presume the jury followed, and because there is otherwise no indication in the record of

an overwhelming probably that the instruction was ignored, the prosecutor's "moral turpitude" comment similarly did not rise to the level of a due-process violation.

Petitioner next contests the prosecutor's reference to Marshall's possession of two bags of marijuana, alleging that the substance of those bags was not subsequently tested to prove their contents. As both the Ohio Court of Appeals and the magistrate judge explained, the prosecutor's reference in this regard was based on the evidence presented at trial. For example, DeAngelo Tait testified that he spoke with Marshall to arrange a sale of two and one-half pounds of marijuana. (Tr. 711-12.) Moreover, Randy Washington testified that he, Tait, and Sublett (the victim) planned to rob drug dealers on May 18, 2005, (Tr. 473-77), that the deal was for two pounds of marijuana, and that he removed two bags of marijuana from Sublett's body after Sublett was shot. (Tr. 476, 492-94.) Washington's testimony further placed both Marshall and Petitioner in the vehicle used to facilitate the sale. (Tr. 480, 502.) Taken together, this testimony supported the prosecutor's reference to Marshall's possession of two bags of marijuana, even if the bags were not subsequently tested to prove that their contents were, in fact, marijuana. It was within the province of the jury to determine what weight to assign the evidence.

Petitioner also argues impropriety in the prosecutor's reference to the 429 pounds of marijuana found in Petitioner's home, alleging that the comment impermissibly suggested that the two pounds of marijuana being sold were taken from Petitioner's home. However, the trial judge permitted the State to introduce into evidence the marijuana found in Petitioner's home. As this Court noted in Ground Four, alleged trial-court errors in state procedure and evidentiary law only warrant relief in a

habeas action if they amount to a deprivation of due process.  *See McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  Thus, because this Court found no due-process violation in the state court's decision to permit into evidence the marijuana found in Petitioner's residence, the prosecutor's reference to that marijuana during closing argument was fair commentary.  Moreover, based on the aforementioned testimony regarding the sale of marijuana, the jury could draw the reasonable inference that the marijuana being sold was taken from Petitioner's home.

Finally, Petitioner argues that the prosecutor improperly referred to Petitioner as a "drug dealer" during closing arguments.  The magistrate judge determined that the trial testimony, taken together, sufficiently supported the prosecutor's remark in this regard and that the jury could draw the reasonable inference that Petitioner was a drug dealer based on the direct and circumstantial evidence presented at trial.  This Court agrees.

At trial, Washington testified that he, Tait, and Sublett planned to rob drug dealers on May 18, 2005 (Tr. 473-77), that the deal was for two pounds of marijuana, and that he removed two bags of marijuana from Sublett's body after Sublett was shot (Tr. 476, 492-94).  Washington's testimony further placed both Petitioner and Marshall in the vehicle used to assist the drug sale.  (Tr. 480, 502.)  Moreover, Officer Ohl testified that 429 pounds of marijuana were found in Petitioner's residence.  (Tr. 783.)  Taken together, this testimony supported the prosecutor's reference to Petitioner as a drug dealer.  The prosecutor based the remark on inferences from the evidence presented in court.

Furthermore, even if the prosecutor's remarks during closing arguments were

improper, thereby satisfying the first prong of the prosecutorial misconduct inquiry, this Court is still not convinced that the comments were so flagrant as to render the entire trial fundamentally unfair.  The factors in determining flagrancy do not weigh in Petitioner's favor.  First, there is no support in the record to believe that the prosecutor's remarks misled the jury or unfairly prejudiced Petitioner when considered in the context of the entire trial.  Even if the prosecutor's "moral turpitude" comment could have misled the jury or prejudiced Petitioner, it was objected to and sustained during trial.  Second, the contested comments were isolated and limited to closing arguments.  Finally, in view of the overall strength of the evidence against Petitioner, this Court is satisfied that the prosecutor's comments were not so flagrant as to render the entire trial fundamentally unfair.

In his objections, Petitioner essentially repeats the arguments considered and rejected by the magistrate judge.  Petitioner also adds irrelevant facts and otherwise fails to introduce new evidence to support his prosecutorial-misconduct claim.  Because no new facts or arguments are introduced, the Court will not further address Petitioner's objections with regard to Ground Five.

Based on the foregoing, the Court rejects Petitioner's objections and finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Ground Five.

**E.  Ground Six**

Petitioner argues that the trial court erred in overruling Petitioner's motion to suppress eyewitness identification, asserting that the identification resulted from unduly suggestive and unreliable techniques.  Specifically, Petitioner maintains that, prior to

18

being shown a photo lineup, Randy Washington was shown photographs of individuals, one of which allegedly depicted Petitioner.  Sometime later, however, these photographs were apparently lost or destroyed, and neither the witnesses nor the Springfield Township police officers could recall who was depicted in the photographs. Petitioner argues that it is reasonable to conclude that one of the lost or destroyed photographs must have included Petitioner and was, therefore, unduly suggestive and unreliable.

According to the Sixth Circuit, "an identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (*citing Neil v. Biggers*, 409 U.S. 188, 196 (1972)).  As recognized by the magistrate judge, the Court must engage in a two-step analysis to determine whether the identification violated Petitioner's due-process right: (1) the Court first must determine whether the identification was unnecessarily suggestive; and (2) if it was, the Court must then assess whether the identification was nonetheless reliable under the totality of the circumstances.  *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). "If an identification is reliable, it will be admissible even if the confrontation was suggestive." *Id.* (*citing Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).  Petitioner bears the burden of showing that the identification was impermissibly suggestive. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

In determining whether an identification was unduly suggestive, the reviewing court "look[s] to the effects of the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice the defendant."  *Howard*, 405 F.3d at

470. In judging reliability, the Court must consider the totality of the circumstances, including: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification. *Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009).

Here, the magistrate judge found that Petitioner failed to carry his initial burden of demonstrating that the eyewitness identification was impermissibly suggestive, thus failing the first step in the two-part inquiry. Accordingly, the magistrate judge determined that it was unnecessary to further address whether the witness identification was reliable under the second step of the analysis.

This Court agrees that Petitioner has failed to carry his burden to demonstrate that the witness identification was unnecessarily suggestive. As explained in the R&R, the record supports the Ohio Court of Appeals' determination that the individual photographs initially shown to Washington did not contain Petitioner's photograph and, therefore, that the photographs necessarily could not have influenced Washington's identification of Petitioner in the later lineup.[7] Detective Ohl testified that the initial interview with Washington began in the late evening of May 18, 2005, and continued into the early morning hours of May 19. (Tr. 74-75.) Ohl further testified that on the day of the shooting, May 18, the police officers were not even aware of Petitioner. (Tr. 75.) According to Ohl, Washington was not shown a photograph of Petitioner at the initial interview on May 18 "because we had no idea who Jason Jones was" at that time. (Tr.

---

[7] Speaking to the initial photographs shown to Washington on May 18, 2005, Petitioner even admits that "[n]o witness could remember whose pictures these photos contained." (Doc. 3, 11.)

75, 829.)  Thus, as of the initial interview with Washington, no photograph of Petitioner was available.  (*See id.*)  Moreover, police did not consider Petitioner to be a suspect until the following afternoon on May 19.  (Tr. 75-77.)  It was on this day—May19—that officers first obtained a picture of Petitioner.  (*Id.*)  This is corroborated by Washington's testimony that he was *first* shown a photograph of Petitioner in an array of six photographs on May 19, not May 18.  (Tr. 65-66, 69-70.)  In short, Petitioner's contention that his photograph was shown to Washington during the initial interview is contrary to the evidence.  Thus, given that the police did not have a photograph of Petitioner in their possession at the time of Washington's initial interview, it necessarily follows that the individual photographs initially shown to Washington did not contain a photograph of Petitioner and, accordingly, that they could not have influenced Washington's later identification of Petitioner in the lineup.

Even assuming arguendo that Petitioner has met his burden of showing that the alleged pre-identification photograph of Petitioner was unduly suggestive, the identification by Washington was nonetheless reliable under the totality of the circumstances.  First, Washington had ample opportunity to view Petitioner before the "sale" of marijuana.  Washington witnessed Petitioner and Marshall arrive at the apartment complex in a green Dodge Durango driven by Petitioner.  (Tr. 479-80.) Moreover, while approaching and standing next to the driver's side door of the Durango, Washington had further opportunity to observe Petitioner.  (Tr. 483-84.)  Second, it appears from the record that Washington focused a considerable amount of attention on Petitioner during this time.  When asked how he was able to identify Petitioner in the lineup without having known or seen him prior to the drug deal, Washington testified

21

that if "[s]omething like that happened to you, you would remember, too.  I remember

his face."  (Tr. 70-72.)  Finally, the time between Washington's initial observation of

Petitioner at the drug deal—May 18—and his subsequent identification of Petitioner in

the photo lineup—May 19—was less than two days.  (Tr. 74-77.)[8]

       Petitioner offers no new facts or arguments to support his contention that the

witness identification was unduly suggestive or unreliable.  Instead, Petitioner attempts

to support his claim by alluding to a new "Bill" purportedly passed by the Ohio General

Assembly.  Specifically, Petitioner argues that "Senate Bill 77 . . . included new State

rights and procedures pertaining to identification" that "the State did not follow."  (Doc.

28, 8.)

       Assuming that Petitioner is referring to the minimum requirements for photo-

lineup procedures under O.R.C. § 2933.83(B) of Substitute Senate Bill Number 77, S.B.

77, 128th Gen. Assem., Reg. Sess. (Ohio 2010) (hereinafter "the Act"), his claim is still

unavailing.  First, Petitioner neither provided enough specificity nor otherwise directed

the Court to any evidence to support his claim.  Second, even if Petitioner could show

that the State violated the minimum requirements for photo lineups under O.R.C. §

2933.83(B), it is doubtful that such a violation of state law could rise to the level

necessary for this Court to provide habeas relief under § 2254.[9]  Perhaps most

---

[8] Note that Washington testified that the first time he was shown a picture of Petitioner was on
May 19 when he saw the photo lineup of six people, one of which included Petitioner.  (Tr. 65-
66, 69-70.)  According to Washington, he had not been shown a picture of Petitioner prior to that
time.  (Tr. 70.)

[9] As previously noted, according to the Sixth Circuit, "[t]rial court errors in state procedure
and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in
a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the
petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494
(6th Cir. 2004) (*citing Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)).  The Sixth Circuit has

importantly, by the date of the Act's enactment—July 6, 2010—Petitioner had already been tried and convicted. Thus, even further assuming for the sake of argument that the State did not follow the minimum requirements under O.R.C. § 2933.83(B),[10] Petitioner's argument is relevant only if the Act applies retroactively. The only provision of the Act that speaks to retroactivity applies to situations in which a petitioner is seeking post-conviction relief for DNA testing or for an alleged deprivation of rights under the Ohio Constitution or the Constitution of the United States. *See* O.R.C. §§ 2953.23, § 2953.21. Because Petitioner's claim that the State violated the new Act's minimum requirements does fall within either of the aforementioned situations, Petitioner's objection is without merit.[11]

Based on the foregoing, the Court rejects Petitioner's objections and finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Ground Six.

---

[10] further noted that "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (same).

[10] The possible remedies for the State's failure to adhere to the minimum requirements are only applicable "[f]or any photo lineup . . . that is administered *on or after* the effective date of [R.C. § 2933.83]." O.R.C. § 2933.83(C) (emphasis added). Because Petitioner was shown photos lineups in 2005 and because the Act was not effective until 2010, the potential remedies are irrelevant to Petitioner.

[11] Even if Petitioner's objection can be construed as claiming a violation of his rights under the Ohio Constitution or the Constitution of the United States, his claim must still fail. Under O.R.C. § 2953.21(A)(1)-(2), Petitioner was required to file a petition for post-conviction relief on this ground in the court that imposed his sentence "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." Because the Ohio Court of Appeals affirmed the trial court on October 12, 2007, and because Petitioner first raised this argument in his objections on July 21, 2010, it is obvious that Petitioner did not comply with the aforementioned statutory requirements with respect to this new argument. Moreover, it appears that the provisions allowing for retroactivity do not apply to Petitioner's circumstances. *See* O.R.C. § 2953.23.

**F.  Ground Seven**

Petitioner argues that the eight-year sentence imposed on him by the trial court is "erroneous and excessive."  (Doc. 3, 12.)  The magistrate judge found that the Ohio Court of Appeals' decision affirming the sentence imposed on Petitioner was not contrary to or an unreasonable application of clearly established federal law.[12]  This Court agrees.

First, as noted by the magistrate judge, Petitioner's eight-year sentence for a conviction of involuntary manslaughter fell within the three to ten year range under the applicable sentencing law.  *See* O.R.C. § 2929.14(A)(1).  Petitioner's sentence was not, therefore, "erroneous" as a matter of state law.  Second, to the extent that Petitioner is alleging that the sentence violates his due process rights, Petitioner's argument still must fail.  Briefly, the Sixth Circuit in *Austin v. Jackson*, 213 F.3d 298 (6th Cir. 2000), held that a state court did not violate the defendant's due-process rights when it sentenced him to forty to sixty years imprisonment—which was within the maximum statutory range—for second-degree murder, despite the fact that the recommended guideline range was twelve to twenty-five years imprisonment.  *Id.* at 300-02.  If the state court in *Austin* did not violate the defendant's due-process rights when it exceeded the recommended sentencing guideline but fell within the maximum statutory range, then the state court here similarly did not violate Petitioner's due-process right when it imposed a sentence within the maximum statutory range.

Finally, to the extent that Petitioner may be alleging his sentence violates the Eighth Amendment's prohibition again cruel and unusual punishment, his argument

---

[12] Petitioner does not appear to object to the magistrate judge's determination with regard to Ground Seven.  (*See* Doc. 28.)

similarly fails.  As noted, the maximum penalty for Petitioner's first-degree felony conviction is ten years.  "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'"  *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (*quoting United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994)).  In any event, under the "narrow proportionality principle," Petitioner's sentence of eight years is neither "extreme" nor "grossly disproportionate" so as to violate the Eighth Amendment.  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (holding that, under the "narrow proportionality principle," the habeas petitioner's sentence of forty to sixty years for second degree murder did not violate the Eighth Amendment when the sentence fell within the statutory maximum); *Harmelin v. Michigan*, 501 U.S. 957, 959 (1991) (discussing "narrow proportionality principle); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) ("[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment."); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995) ("Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole.").  In short, Petitioner's sentence fell within the statutory maximum for involuntary manslaughter, a first-degree felony, and did not violate the Eighth Amendment.

Based on the foregoing, the Court finds no error in the magistrate judge's recommendation that Petitioner is not entitled to habeas corpus relief based on Ground Seven.

## IV.    <u>CONCLUSION</u>

Having reviewed the matter in accordance with Rule 72 of the Federal Rules of

Civil Procedure, the Court finds the R&R to be correct.  Accordingly, it is ordered that:

1.  The R&R (Doc. 20) is hereby **ADOPTED**.

   a.  Petitioner's objections (Doc. 28) are **OVERRULED**.

   b.  Petitioner's Petition for Writ of Habeas Corpus (Docs. 2, 3) is

       **DISMISSED WITH PREJUDICE**.

   c.  Petitioner is **DENIED** leave to appeal *in forma pauperis*.

   d.  Petitioner is **DENIED** a certificate of appealability.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
United States District Judge
